STATE OF NORTH CAROLINA, Plaintiff v. JACK R. FOY, Defendant

No. COA97-932

(Filed 4 August 1998)

## 1. Crimes, Other— maiming—evidence insufficient

Defendant's motion to dismiss a charge of maiming without malice under N.C.G.S. § 14-29 should have been granted in a prosecution arising from an altercation in a jail because the State's evidence did not show that defendant bit off any part of the deputy's ear. The statute is ambiguous as to whether "bite or cut off the nose, or a lip or an ear" requires that the ear be bitten off; the ambiguity is resolved against the State and, while biting

off the nose, lip, or ear of another is a proscribed act under N.C.G.S. § 14-29, merely biting the nose, lip, or ear of another is not.

**2. Evidence— prior assaults—no prejudice**

There was no prejudicial error in a prosecution arising from an altercation in a jail between defendant and a deputy in admitting testimony that defendant had assaulted government officers on two previous occasions. Three officers of the Mecklenburg County Sheriff's Department provided eyewitness testimony as to the events leading to these charges and there is no reasonable possibility that a different result would have been reached had the disputed testimony been excluded

Appeal by defendant from judgment entered 3 October 1996 by Judge Jerry Cash Martin in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 April 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General E. Clementine Peterson, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Assistant Appellate Defender Danielle M. Carman, for defendant-appellant.*

LEWIS, Judge.

The State's evidence tended to show the following. On the morning of 23 December 1995, defendant was booked at the Intake Center of the Mecklenburg County Jail on charges unrelated to this appeal. The Intake Center consists of four cell blocks. Each cell block contains four single cells measuring ten by five feet and two larger dormitory cells. The single cells house one person each and contain only a metal bunk bed, toilet, and sink. The dormitory cells house up to twelve people and contain four bunk beds, a toilet, a sink, and a pay phone. Defendant was placed in Cell B4, a dormitory cell.

Some twelve hours later, around 10:00 p.m., Deputy Sheriff Scottie Hartsell placed another prisoner in Cell B4. Defendant stepped into the doorway of the cell and said he needed to see the jail nurse. Deputy Hartsell and Deputy Sheriff Tracy Baumgardner both told defendant to get back into his cell. Defendant did not comply. Hartsell decided to move defendant into Cell B2, a single cell across the hall. Hartsell testified that when they arrived at Cell B2, defend-

ant began to argue because it did not have a pay phone, and defendant repeated that he needed to see the nurse. Defendant "raised his hand," and Deputy Hartsell responded by pushing defendant inside the cell. Defendant then punched Hartsell on the side of his head, knocking his eyeglasses to the ground. A scuffle ensued.

In the course of the row, defendant bit the top of Hartsell's left ear and drew blood. Deputy Baumgardner sprayed defendant with pepper mace and struck him with a baton to subdue him. Deputy Hartsell went to the hospital and got thirteen stitches on his ear. There was no evidence that any part of his ear was actually severed.

On 3 October 1996, defendant was convicted of three crimes allegedly committed during the December altercation: maiming without malice, in violation of N.C. Gen. Stat. § 14-29 (1993); injury to personal property, in violation of N.C. Gen. Stat. § 14-160 (1993); and assault on a government officer, in violation of N.C. Gen. Stat. § 14-33(c)(4) (Cum. Supp. 1997). He now appeals from those convictions.

**[1]** Defendant first argues that his conviction of maiming without malice should be reversed. The relevant statute provides,

> If any person shall, on purpose and unlawfully, but without malice aforethought, cut, or slit the nose, bite or cut off the nose, or a lip or an ear, or disable any limb or member of any other person, or privy members of any other person, with intent to kill, maim, disfigure, disable or render impotent such person, the person so offending shall be punished as a Class E felon.

N.C. Gen. Stat. § 14-29 (1993). Defendant moved to dismiss the maiming charge at the close of the State's evidence and again at the close of all the evidence. These motions were denied. Over defendant's objection, the trial court instructed the jury that the State must prove that "[d]efendant bit off the ear, bit off a part of the ear, *or bit the ear* of the victim, Scottie A. Hartsell, thereby permanently injuring him" (emphasis added). Defendant argues that one cannot violate section 14-29 by merely *biting* the ear of another; rather, defendant argues, one must actually *bite off* the ear. We agree.

Section 14-29 is hardly a model of clarity. Consider, for example, the passage that lists the following proscribed acts: "cut[ting], or slit[ting] the nose, bit[ing] or cut[ting] off the nose, or a lip or an ear." This wording suggests that while cutting *off* a lip or an ear is pro-

STATE v. FOY

[130 N.C. App. 466 (1998)]

scribed conduct, merely cutting or slitting those body parts—without cutting or slitting them *off*—does not violate the statute. Yet, cutting or slitting the *nose*—without cutting or slitting it off—*is* a proscribed act.

This case requires us to construe the part of the statute that makes it unlawful to "bite or cut off the nose, or a lip or an ear." The question is whether the adverb "off" modifies only the verb "cut," or whether it modifies the verb "bite" as well. On the one hand, the legislature's failure to place the adverb "off" immediately after the word "bite" suggests that mere biting of the lip or ear is prohibited. On the other hand, the passage can easily be read such that the adverb "off" modifies both of the verbs in the disjunctive clause preceding it: "bite or cut."

Faced with an ambiguous criminal law such as this, we apply the general rule of statutory construction and resolve the ambiguity against the State. *State v. Hageman*, 307 N.C. 1, 9, 296 S.E.2d 433, 438 (1982). We therefore conclude that while biting off the nose, lip, or ear of another is a proscribed act under G.S. 14-29, merely biting the nose, lip, or ear of another is not. The trial court erred when it instructed the jury that it could find defendant guilty of violating section 14-29 if it determined that defendant had bitten Deputy Hartsell's ear without biting it off in part or altogether. Defendant's motion to dismiss the maiming charge should have been granted because the State's evidence did not show that he bit off any part of Deputy Hartsell's ear. Defendant's conviction of maiming without malice in violation of section 14-29 is therefore reversed.

[2] Defendant next argues that the trial court erroneously allowed into evidence testimony that defendant had, on two previous occasions, assaulted government officers. That testimony was substantially as follows:

Mecklenburg County Security Officer Monroe testified that, on 6 February 1990, he responded to a call from a government facility in Charlotte. Upon his arrival, he was told that defendant had come to a meeting with a gun in his holster. Defendant was told to put the gun in his vehicle and he reluctantly said that he would. When he returned to the meeting, however, defendant's coat was bulging as though it was concealing a gun. When Officer Monroe asked to search him, defendant became argumentative and denied the request. Officer Monroe then grabbed defendant by the shoulders, turned him toward the wall, and began to pat him down. Defendant turned back around

and shoved Officer Monroe in the chest. He was arrested and charged with assault on an officer.

Officer Charles Smith testified regarding a separate incident. On 20 May 1991, Smith responded to a disturbance call at a pool hall in Matthews. When he arrived, defendant was "boisterous" and appeared intoxicated. Officer Smith took defendant outside and attempted to calm him down. Defendant was arrested, taken to the police station, and placed in a holding cell. Officer Smith then removed defendant's handcuffs and tried to complete paperwork at a desk in the cell. Defendant jumped around the desk, kicked Officer Smith, and pinned him against the wall with the desk. Defendant was eventually restrained and charged with assault on an officer.

The trial court admitted this testimony as relevant to prove defendant's intent to assault Deputy Hartsell. Defendant argues that this testimony was irrelevant, unduly prejudicial, and, in part, violative of the hearsay rule. Even if defendant is correct, which we do not decide, he has failed to show that the admission of this testimony prejudiced him. Three officers of the Mecklenburg County Sheriff's Department provided eyewitness testimony as to the events leading to the charges against defendant. There was substantial evidence that defendant assaulted a government officer and damaged the personal property of Deputy Hartsell. There is no "reasonable possibility . . . that a different result would have been reached" on these charges had the disputed testimony been excluded. N.C. Gen. Stat. § 15A-1443(a) (1997).

Conviction on the charge of maiming, 95 CRS 94671, is reversed; no error on the remaining charges.

Judges GREENE and HORTON concur.